No. DA 06-0139

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 22

_____

WENDELL STANTON,

        Plaintiff and Respondent,

   v.

WELLS FARGO BANK MONTANA, N.A.,

        Defendant and Respondent.

_____

IN THE MATTER OF THE FRANCES S. BARKER
TRUST UNDER AGREEMENT.

_____

NEW LIFE FELLOWSHIP OF MONTANA, INC.,
d/b/a TRAIL'S END RANCH,

        Intervenor and Appellant,

   v.

WENDELL STANTON, TRUSTEE OF THE WENDELL
STANTON TRUST DATED 8/7/2000, Account No. 7AJ 006230;
and WELLS FARGO BANK MONTANA, N.A.,

        Third-Party Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                    In and for the County of Yellowstone, Cause No. DV-04-0685,
                    The Honorable Ingrid Gustafson, Presiding Judge.

COUNSEL OF RECORD:

For Appellant:

Richard O. Harkins, Attorney at Law, Ekalaka, Montana

For Respondent Wells Fargo Bank, N.A.:

Vicki L. McDonald, McDonald Law Firm, Billings, Montana

For Respondent Wendell Stanton:

Patrick C. Sweeney, Attorney at Law, Billings, Montana

_____

Submitted on Briefs:  November 28, 2006

Decided:  January 30, 2007

Filed:

_____
Clerk

2

Justice Brian Morris delivered the Opinion of the Court.

¶1    Respondent Wendell Stanton (Stanton) filed a complaint to compel Wells Fargo Bank, N. A., (Wells Fargo), to distribute the corpus of Frances Scanlan Barker's (Frances) trust to him. Wells Fargo responded by filing a petition for approval of its final accounting and requested that the District Court determine the beneficiary of Frances's trust. New Life Fellowship of Montana, d/b/a Trail's End Ranch (Trail's End), a previous beneficiary to Frances's trust, intervened. Trail's End claimed that Stanton exercised undue influence over Frances and that Wells Fargo breached its fiduciary duty owed to Trail's End. The District Court for the Thirteenth Judicial District, Yellowstone County, granted summary judgment in favor of Stanton and Wells Fargo on the grounds that Trail's End failed to show the existence of undue influence, constructive fraud, and that Wells Fargo owed no fiduciary duty to Trail's End. Trail's End appeals and we affirm.

¶2    We address the following issues:

¶3    1.  Did the District Court properly grant summary judgment in Stanton and Wells Fargo's favor?

¶4    2.  Did Wells Fargo breach its fiduciary duty?

¶5    3. Did Stanton commit fraud in procuring the amendments to Frances's Trust, Will, and stock transfer?

FACTS AND PROCEDURAL HISTORY

¶6    Frances and her husband, Robert Barker (Bob), owned and operated a drug store in Hardin, Montana. Frances and Bob had one daughter, Joanne Barker (Joanne). Joanne

3

married Stanton in 1963. Stanton worked as an accountant and attorney. Frances and Bob had concerns regarding Stanton's ability to manage his finances and provide for Joanne. These concerns prompted Frances and Bob to establish separate revocable trusts for the assets that they accumulated over the years.

¶7    On June 16, 1977, Frances executed a Trust Agreement establishing the Frances S. Barker Trust (Trust) and named Norwest Capital Management and Trust Company of Billings as trustee. Wells Fargo later acquired the Trust. The Trust Agreement provided that if Joanne became the beneficiary of the Trust, she could appoint various non-profit charities and blood relatives as beneficiaries, but "specifically excluding her husband." Trust administrators also stated that Frances worked closely with them and they considered her a "hands on" trustor who enjoyed making investment decisions regarding her Trust.

¶8    Stanton had incurred IRS liens on Joanne's and his family home that resulted in its foreclosure in 1995. Stanton and Joanne divorced and Frances bought the home for Joanne. Stanton and Joanne continued their relationship despite the divorce. Joanne developed terminal cancer about the same time. On October 18, 1996, Frances met with her attorney, Tom Stusek (Stusek), to change the beneficiary of her Trust because of Joanne's illness. Stusek suggested various charitable organizations as possible beneficiaries, including Trail's End. Frances never met with a representative of Trail's End or had any prior connection to Trail's End. Stusek drafted France's Restated Trust Agreement (1996 Trust Agreement) and included Trail's End as a beneficiary. Joanne died in April, 1997. Before her death, Joanne asked Frances to "take care of Wendell."

4

¶9 Stanton and Frances's relationship warmed following Joanne's death, and she told Rick Rigler (Rigler), the trust officer at the time, that she felt Stanton had "turned himself around." Frances lived in an independent living retirement community at this time, and Stanton visited her daily for lunch and took her on errands. Frances asked Stusek in 1999 to draft her Will that created a testamentary trust for Stanton's benefit in the amount of $200,000. The income from the testamentary trust was to be distributed to Wendell during his lifetime and principle to be distributed to the Barker Family Foundation upon Stanton's death.

¶10 Stanton continued to spend a considerable amount of time with Frances and drove her to California several times to visit her brothers. After Stanton and Frances returned from one of their trips to California, Frances told Stanton that she had spoken with her two brothers and that they approved of her making Stanton the beneficiary of her Trust. Frances told her Trust administrator in February, 2000, that she was transferring legal work from her current attorney, Stusek, to Stanton and that Stanton would be her accountant. She also left a message on Stusek's answering machine stating that she no longer required his representation. Shortly after, on April 20, 2000, Frances had Stanton revise her 1996 Trust Agreement to provide that the Trust income should be used for her care and that income and principal distributions should be made to Stanton as he requested. Then, upon her death, the corpus of the Trust would go to Stanton and the Trust would be terminated. The Amendment to Trust Agreement (2000 Trust Agreement) terminated gifts to all previous beneficiaries including Trail's End. Rigler stated that he believed that Frances had "complete control of her faculties" at this point.

5

¶11     Frances asked Stanton on June 6, 2000, to draft her amended Will.  The amended Will named Stanton as the sole beneficiary.  Two months later, Frances directed Wells Fargo to transfer stocks worth approximately $532,500 to Stanton.  Frances was 90 years old by this time, but several friends stated that she was in good mental and physical health and described her as strong-willed.  Although Frances made dramatic changes both to her Will and to the 1996 Trust Agreement, close friends acknowledged that Frances treated Stanton as her last living relative.  Frances's brothers approved of Frances's decisions regarding the disposition of her assets.  Stanton also saw Frances on a daily basis and she referred to him as her son-in-law.

¶12     Frances asked Bruce Haswell (Haswell), the Trust administrator, in September, 2001, to put her in touch with a new attorney.  Frances apparently felt that Stanton was becoming "greedy" and she wanted him out of her Will.  An attorney contacted Frances at Haswell's behest.  Frances, once again changing course, told the attorney she did not remember suggesting any changes to her documents.  Stusek contacted Wells Fargo in May, 2002, to express his concern that Stanton was exercising undue influence over Frances.  Stusek stated that a couple of Frances's friends had contacted him regarding their concerns that Frances did not return their phone calls.

¶13     Frances signed a power of attorney on September 4, 2002, appointing Stanton as her attorney in fact.  Frances broke her hip at the end of the month, and moved into a nursing home after being discharged from the hospital.  Frances's health deteriorated in the nursing home, and by August, 2003, Dr. Glenda Wickstrom verified in a letter that Frances suffered from advancing Alzheimer's dementia and was unable to manage her

own affairs. Dr. Wickstrom recommended that Stanton be appointed her guardian with power of attorney.

¶14 Frances died in November, 2003, and Stanton requested a final distribution of the Trust. Wells Fargo refused and Stanton filed a complaint against Wells Fargo to compel Wells Fargo to distribute the corpus and the income of the Trust, and to compel a final accounting and termination of the Trust. Wells Fargo filed a petition for a declaratory judgment authorizing and directing the distribution of the Trust assets and for a determination of the validity of Frances's 2000 Will and the 2000 stock gift to Stanton. The District Court consolidated the cases.

¶15 Trail's End intervened in the action as a beneficiary under Frances's 1996 Trust Agreement. Trail's End alleges that Wells Fargo had breached its fiduciary duty to Trail's End as a beneficiary. Trail's End also alleges that Stanton had a fiduciary relationship as Frances's attorney and exercised undue influence over Frances or committed constructive fraud in procuring the Trust amendment, Frances's Will, and stock gift.

¶16 The District Court determined that Trail's End had failed to show the existence of undue influence or constructive fraud and also determined that Wells Fargo owed no fiduciary duty to Trail's End. The District Court granted summary judgment in favor of Stanton and Wells Fargo and directed Wells Fargo to distribute the remaining assets of the Trust to Stanton. This appeal followed.

## STANDARD OF REVIEW

¶17 We review *de novo* a district court's grant of summary judgment using the

7

standard established by M. R. Civ. P. 56. The moving party must establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Gliko v. Permann*, 2006 MT 30, ¶ 12, 331 Mont. 112, ¶ 12, 130 P.3d 155, ¶ 12. Once a moving party has met its burden, the opposing party must present substantial evidence essential to one or more elements of its case in order to raise a genuine issue of material fact. *Gliko*, ¶ 12. We review a district court's conclusions of law to determine whether they are correct. *Gliko*, ¶ 13.

## ISSUE ONE

¶18 *Did the District Court properly grant summary judgment in Wells Fargo and Stanton's favor?*

¶19 Trail's End asserts that genuine issues of material fact exist as to the relationship between Stanton and Frances and whether Frances was competent at the time that she amended her 1996 Trust Agreement and Will. Trail's End argues the fact that Stanton had drafted Frances's 2000 Trust Agreement and Will shifts the burden to Stanton to prove that no undue influence took place. Stanton concedes that he had a confidential relationship with Frances, but he asserts that no evidence exists to show he abused this relationship. He contends that the District Court correctly found that Trail's End had the burden to prove undue influence and that Trail's End had failed to present any evidence to raise a genuine issue of material fact on the issue. We agree.

¶20 This Court has recognized that the imposition of undue influence may negate the free consent necessary for the valid creation and enforcement of an express trust. *Matter of Estate of Eggebrecht*, 1998 MT 249, ¶ 10, 291 Mont. 174, ¶ 10, 967 P.2d 388, ¶ 10.

8

Section 28-2-407, MCA, defines undue influence as:

> (1) the use by one in whom a confidence is reposed by another or who holds a real or apparent authority over him of such confidence or authority for the purpose of obtaining an unfair advantage over him;
> (2) taking an unfair advantage of another's weakness of mind; or
> (3) taking a grossly oppressive and unfair advantage of another's necessities or distress.

¶21 To determine whether there has been undue influence, a court may consider: (1) any confidential relationship between the person alleged to be exercising undue influence and the donor; (2) the physical condition of the donor as it may affect his or her ability to withstand influence; (3) the mental condition of the donor as it may affect his or her ability to withstand influence; (4) the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to influence; and (5) the demands and importunities as they may affect the donor, taking into account the time, place, and surrounding circumstances. *In re Estate of Bradshaw*, 2001 MT 92, ¶ 13, 305 Mont. 178, ¶ 13, 24 P.3d 211, ¶ 13 (citation omitted). The five criteria may, but need not, be present in any given undue influence case. The statutory requirements still control. The five criteria simply represent nonexclusive considerations available to guide the trial court in its application of the statutory requirements. *Bradshaw*, ¶ 16.

*Confidential Relationship*

¶22 Stanton concedes the existence of a confidential relationship with Frances. Stanton married Frances's only daughter, Joanne, in 1963. Although Stanton may have disappointed Frances at times during his 32 year marriage to Joanne, he remained close to Frances after Joanne's death and their relationship improved. Stanton continued

9

spending time with Frances and visited her daily. He drove Frances around town when she needed as she had no close relatives living in Montana. Stanton also drove Frances to California several times to visit her brothers.

¶23 Stanton drafted the revisions to Frances's 1996 Trust Agreement in April, 2000, at her request and later, in June, Stanton drafted a new Will for Frances. Stanton was the named beneficiary to both. Trail's End contends that we should presume undue influence because Stanton drafted these documents for Frances and thus the burden should have been shifted to Stanton.

¶24 The contestants of a will have the burden of establishing undue influence. Section 72-3-310, MCA. Undue influence may never be presumed and must be proven like any other fact. *Matter of Estate of Lien*, 270 Mont. 295, 304, 892 P.2d 530, 535 (1995), *overruled in part on other grounds*, *Bradshaw*, ¶ 16. As noted by the District Court, Stanton's role in acting as Frances's attorney in preparing the 2000 Trust Agreement, the Will, and stock gift could constitute a violation of Rule 1.8(c) of the Montana Rules of Professional Conduct. We have previously stated, however, that a violation of a professional conduct rule "should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 34, 303 Mont. 274, ¶ 34, 16 P.3d 1002, ¶ 34. The District Court correctly determined, therefore, that Trail's End had the burden of proving undue influence.

¶25 Stanton's role in drafting Frances's 2000 Trust Agreement and Will establishes the existence of a confidential relationship. The mere opportunity to exercise undue

10

influence on the testator is not sufficient, however, to prove undue influence. We must consider and correlate the opportunity to exercise undue influence with the alleged acts of influence to determine if the acts amount to undue influence. *Lien*, 270 Mont. at 304, 892 P.2d at 535. The existence of a confidential relationship, without more, is insufficient to prove Stanton exercised undue influence over Frances.

*Physical and Mental Condition*

¶26 Trail's End argues that Frances suffered from the affects of Alzheimer's disease at the time that she executed the amendments to her 1996 Trust Agreement and Will in 2000. Trail's End contends that this diminished mental state left her susceptible to undue influence. Testimony from people who knew Frances, however, reveal that Frances remained physically active and independent during the time in question. Frances lived independently, first in a condominium, and then in an independent living retirement community. Frances was admitted to the hospital briefly for heart trouble in 1999, but her medical records indicate that she was alert, oriented, and looked much younger than her 90 years. The medical records also indicate that Frances had not required any medical attention during the previous 30 years. She had no other physical ailments until she suffered a broken hip in 2002.

¶27 Friends also described Frances as mentally sharp and strong-willed even into her 90's. Stusek described her as a "pragmatic kind of woman of steely determination," and stated that he had no concerns about Frances's mental capacity when he amended her Trust in 1999. Rigler also stated that Frances was "in complete control of her faculties" when he met with her to review her 2000 Trust Agreement. In fact, Trail's End "admits

that the medical records and apparent actions by Mrs. Barker seem to indicate that she was in control of her decisions." Dr. Wickstrom did not diagnose Frances with Alzheimer's until late 2003. Trail's End failed to provide evidence that establishes that Frances suffered any decline in her mental condition leaving her susceptible to undue influence at the time she executed the documents in 2000.

¶28 Trail's End offered the deposition testimony of Dr. Roger Williams (Dr. Williams) in an attempt to establish that Frances suffered from the effects of Alzheimer's disease at the time she made changes to her 1996 Trust Agreement and Will. Wells Fargo moved to exclude Dr. Williams's testimony on the grounds that his opinion was speculative because he never met or examined Frances. The District Court considered Dr. Williams's deposition testimony and correctly concluded that his testimony presented only speculation as to Frances's mental condition in 2000. *Ike v. Jefferson Nat. Life Ins. Co.*, 267 Mont. 396, 402, 884 P.2d 471, 475 (1994). In *Ike*, this Court determined that a doctor's testimony failed to present an issue of material fact on the basis that the doctor never met or examined the patient and only could speculate as to the cause of death. *Ike*, 267 Mont. at 402, 884 P.2d at 475.

¶29 Similarly, Dr. Williams never met or examined Frances and she never had undergone a neuropsychological evaluation for him to review. Dr. Williams opined that Frances probably suffered some intellectual decline, but he could not state a level of impairment with a reasonable degree of medical certainty. Dr. Williams's testimony represents his speculation as to Frances's mental condition based on literature regarding the rate of intellectual decline of Alzheimer's patients. Speculative statements, however,

12

are insufficient to raise genuine issues of material fact. *Ike*, 267 Mont. at 402, 884 P.2d at 475. Instead, the testimony from the individuals who knew Frances revealed that she was healthy, self-sufficient, aware, and actively involved in her investments.

*Unnaturalness of a Disposition*

¶30 The District Court concluded that the disposition to Stanton was a more natural distribution than a distribution to charities to which Frances had little or no connection during her lifetime. Frances's close friends testified that Frances still referred to Stanton as her "son-in-law" even after his divorce and that Frances promised Joanne that she would "take care" of Stanton. Frances's brother, Joseph Scanlan, also knew of, and supported, Frances's intention to leave her estate to Stanton.

¶31 Trail's End admits it never met with Frances or had any other connection with her. Stusek also stated that, when he drafted the 1996 Trust Agreement, he suggested a list of tax-exempt organizations, including Trail's End, from which Frances could choose. The District Court correctly concluded that the disposition was natural and that this factor raised no questions of fact regarding the presence of undue influence.

*Demands and Importunities*

¶32 Finally, the District Court found that Trail's End failed to present any evidence that Stanton made any requests or demands on Frances to amend her Will or Trust or to provide any monetary gifts to him. Although the amendments to Frances's testamentary documents significantly depart from her 1996 Trust Agreement, all the evidence presented demonstrates that designating Stanton as her beneficiary was not the result of

13

undue influence by Stanton. Frances's friends, brother, and her trustees attest that she wanted Stanton to be the sole beneficiary of her Trust and estate.

¶33 Frances and Stanton admittedly had a confidential relationship. Trail's End demonstrated, at most, however, that Stanton had the opportunity to exercise undue influence. The opportunity to exercise undue influence on the testator is not sufficient to prove undue influence and invalidate a will or trust. *In re Estate of Harms*, 2006 MT 320, ¶ 36, 335 Mont. 66, ¶ 36, __P.3d__, ¶ 36. The substantial evidence in the record reveals that Frances was in good physical and mental health for a woman of her age and that she was in full command of all her faculties and was not easily subjected to the influence of others in 2000, when she revised her Will and Trust documents. The District Court properly granted Wells Fargo and Stanton's motions for summary judgment.

ISSUE TWO

¶34 *Did Stanton commit fraud in procuring the amendments to Frances's Trust, Will, and stock transfer?*

¶35 Trail's End argued in the District Court that Stanton had committed constructive fraud to induce Frances to making the changes to her Will and the 1996 Trust Agreement and to gift him stock. Trail's End argues on appeal, however, that Stanton committed actual fraud. The general rule in Montana is that we will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Valley Bank of Ronan v. Hughes*, 2006 MT 285, ¶ 31, 334 Mont. 335, ¶ 31, 147 P.3d 185, ¶ 31 (citation omitted). We decline to address this issue.

14

¶36    *Did Wells Fargo breach its fiduciary duty to Trail's End?*

¶37    Trail's End argues that Wells Fargo breached its fiduciary duty to Trail's End on the grounds that Frances lacked the capacity to amend her 1996 Trust Agreement and remove Trail's End as a beneficiary. Trail's End also argues that Wells Fargo breached its fiduciary duty to Trail's End by permitting Frances to gift $532,500 worth of stock to Stanton in 2000.

¶38    Section 72-33-701, MCA, provides that the trustee of a revocable trust owes a fiduciary duty only to the person holding the power to revoke. Section 72-33-701, MCA, provides limitations on the rights of beneficiaries of revocable trusts. This subsection confirms that the trustee owes duties "to the person holding the power to revoke" during the time that the person holding the power to revoke is competent. Section 72-33-701(2), MCA. The subsection further provides that the person holding the power to revoke, "and not the beneficiary, has the rights afforded beneficiaries under chapters 33 through 36." Section 72-33-701(1), MCA. Frances held the power to revoke during the time in question. We previously have concluded that Frances was competent during those periods. *Supra* ¶ 32. Therefore, Wells Fargo owed a fiduciary duty only to Frances regarding her Trust, and not to Trail's End.

¶39    Trail's End also failed to provide any evidence that Frances was not competent to amend her Trust Agreement. Testamentary capacity requires three elements of which the testator must be aware: (1) the nature of the acts to be performed; (2) the nature and extent of the property to be disposed; and (3) the objects of his or her bounty. *In re*

15

*Estate of Harms*, ¶ 14. Testamentary capacity is determined as the date the will was executed and the contestants have the burden of establishing lack of capacity. Section 72-3-310, MCA. Trail's End fails to provide any evidence, other than the speculative testimony of Dr. Williams, to support its claim that Frances lacked capacity to make the changes to her Trust Agreement or make her stock gift to Stanton. The District Court correctly concluded that Wells Fargo did not owe Trail's End a fiduciary duty.

¶40 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART