DA 06-0735

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 346

KIERSTEN RICH,

      Plaintiff and Appellant,

   v

JEFFREY ELLINGSON, d/b/a ELLINGSON
LAW OFFICE and ATTORNEY'S
LIABILITY PROTECTION SOCIETY,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-2006-233A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Sean S. Frampton, Morrison & Frampton, Whitefish, Montana

      For Appellees:

          Thomas M. Welsch, Cynthia L. Cate, Poore, Roth & Robinson, PC,
Butte, Montana

Submitted on Briefs:  August 15, 2007

Decided:  December 18, 2007

Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Kiersten Rich (Rich) appeals the grant of summary judgment in favor of Jeffrey Ellingson (Ellingson) and the Attorney's Liability Protection Society (ALPS). Rich was involved in two separate motor vehicle accidents, one occurring in 1993 and the other in 1994. She hired Ellingson to represent her in securing uninsured motorists' (UM) and underinsured motorists' (UIM) coverage from her insurer State Farm for the respective accidents, and to assert Unfair Trade Practice (UTPA or bad faith) claims for the handling of both claims. Due to Ellingson's failure to timely serve a summons upon State Farm after filing the UIM claim, Rich's UIM claim was dismissed in both state and federal court. As a result, she filed the first of two legal malpractice claims against Ellingson and ALPS, Ellingson's malpractice insurer. Rich settled with ALPS and signed a Limited General Release (Release) releasing ALPS and Ellingson from any and all future malpractice claims that may arise as a result of Ellingson's representation of Rich against her insurer.

¶2 Later, Rich's UTPA claims against her insurer were dismissed because the statute of limitations had run. Rich in turn filed a second legal malpractice claim against Ellingson. In response, Ellingson and ALPS argued that the unambiguous terms of the Release barred future, unknown claims, arising from Ellingson's representation of Rich against her insurer. The parties stipulated that there were no material issues of fact. The District Court found the Release dispositive, clearly barring the second malpractice claim asserted by Rich, and entered summary judgment. We affirm.

**ISSUE**

2

¶3      Does the Release signed upon settlement of one malpractice claim (for failure to timely issue a summons) bar a subsequent malpractice claim discovered two years later arising out of the same legal representation?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      Rich was involved in two motor vehicle accidents within a period of one year, the first on November 28, 1993, and the second on October 21, 1994.  At the time of these accidents, Rich had medical payments (Med Pay), (UIM) and (UM) coverage through State Farm Mutual Automobile Insurance Company (State Farm).  She made a claim for Med Pay and UIM benefits as a result of the 1993 accident and a claim for Med Pay and UM benefits as a result of the 1994 accident.  On April 10, 1995, Rich sought legal representation from Ellingson in connection with her claims against State Farm.

¶5      On November 22, 1996, Rich, through Ellingson, filed a complaint against State Farm in the Eleventh Judicial District, Flathead County, seeking UIM coverage in relation to the November 28, 1993 accident.  That same day a summons was issued to State Farm, but it was never served.

¶6      On January 2, 2001, Rich filed an action against State Farm in the United States District Court of Montana, Missoula Division, for breach of contract for failure to pay Med Pay and UIM benefits, and for damages for State Farm's alleged violations of the UTPA with respect to its handling of the 1993 accident.  She also sought damages for breach of contract for failure to pay Med Pay and UM coverage for the 1994 accident, and sought damages for State Farm's alleged violations of UTPA in handling the claims arising out of that accident as well.

3

¶7 On June 11, 2001, due to the lack of timely service of summons, Rich filed a notice of voluntary dismissal without prejudice in the state court UIM action pursuant to Mont. R. Civ. P. 41(a)(1).

¶8 On June 13, 2001, State Farm filed a motion for partial summary judgment in the federal action seeking dismissal of the UIM claim arising out of the 1993 accident because Rich had failed to comply with Mont. R. Civ. P. 41(e), in the state court action, and thus the federal action for the same relief was automatically barred.[1] The federal court granted partial summary judgment on the UIM claim relative to the 1993 accident. On June 18, 2001, State Farm then filed an amended answer to Rich's complaint in federal court, alleging affirmative defenses of statute of limitations and res judicata with respect to the remaining claims.

¶9 After her federal UIM claims against State Farm were dismissed, Rich filed a claim against Ellingson for legal malpractice, seeking benefits from his malpractice insurance carrier, ALPS. On November 18, 2003, Rich settled her malpractice claim against Ellingson in exchange for payment of $175,000. Rich signed the Settlement Agreement and entered into the Release, which contained the following language:

> **Description of Casualty:** Alleged legal malpractice of any kind arising out of or related to the representation of Kiersten Rich by Jeffrey D. Ellingson.
>
> . . . .

---

[1] The background of this aspect of the case is complicated. Since the resolution of this issue is not the subject of this appeal and has no bearing on the question now before this Court, we will not address it further. [For more information regarding the earlier appeal, see *Rich v. State Farm Mut. Auto. Ins. Co.*, 2003 MT 51, ¶ 4, 314 Mont. 338, ¶ 4, 66 P.3d 274, ¶ 4.]

**1. <u>Release</u>**

   The undersigned Releasor acknowledges receipt of the above sum of money and in consideration for payment of such sum, fully and forever releases and discharges Releasee, Releasee's heirs, personal representatives, successors, assigns, agents, partners, employees and attorneys from any and all actions, claims causes of action, demands, or expenses for damages or injuries, whether asserted or unasserted, known or unknown, foreseen or unforeseen, arising out of or related to the described casualty.

**2. <u>Future Damages</u>**

   Inasmuch as the injuries, damages, and losses resulting from the events described herein may not be fully known and may be more numerous or more serious than it is now understood or expected, the Releasor agrees, as a further consideration of this agreement, that this Release applies to any and all injuries, damages and losses resulting from the casualty described herein, even though now unanticipated, unexpected and unknown, as well as any and all injuries, damages and losses which have already developed and which are now known or anticipated.

   . . . .

**6. <u>Reservation of Claims</u>**

   While this release fully and finally releases Releasee of any and all claims of any kind whatsoever which Releasor does or could have against him, Releasor specifically reserves any and all claims she may have against State Farm Insurance Companies, including her bad faith claim.

**7. <u>Disclaimer</u>**

   Releasor has carefully read the foregoing, discussed its legal effect with Releasor's attorney, understands the contents thereof, and signs the same of Releasor's own free will and accord.

¶10   On October 7, 2005, a U.S. Magistrate Judge dismissed Rich's remaining federal court claims, concluding that res judicata barred Rich's claims for Med Pay benefits and the statute of limitations barred her UTPA claims. Following dismissal of her remaining breach of contract claims and her bad faith claims, Rich filed this action against Ellingson and ALPS, alleging that Ellingson was guilty of legal malpractice. Rich argued that the

Release applied only to the malpractice "alleged" prior to the execution of the Release, thus limiting its application to the UIM complaint and not the bad faith complaints. Ellingson and ALPS raised the Release, signed on November 19, 2003, as a bar to suit. They further asserted that certain negotiated provisions demonstrate that the Release was not a standard boilerplate form. In their reply brief, they argued that even if the Release arguably covered only known claims, Rich had had notice of the statute of limitations affirmative defense in the UTPA actions *prior to* her execution of the Release; thus, that claim was barred under either theory. On May 30, 2006, the parties submitted to the District Court a statement of stipulated facts upon which the court relied in making its determination.

¶11 On October 3, 2006, the District Court granted the Defendants' motion for summary judgment, holding that the Release was dispositive in that it clearly barred Rich from bringing future claims against Ellingson arising from his representation of Rich in her actions against her insurer. The court further pointed out that the plaintiff offered no evidence of fraud, duress or mutual mistake, nor did she offer admissible extrinsic or parol evidence to contradict the clear terms of the Release; therefore, the court had no basis on which to find that the parties' intent differed from the express terms of the Release. Rich timely appeals.

**STANDARD OF REVIEW**

¶12 We review a district court's grant of summary judgment de novo. *Dyess v. Meagher County*, 2003 MT 78, ¶ 7, 315 Mont. 35, ¶ 7, 67 P.3d 281, ¶ 7. When we review an award of summary judgment, we apply the same analysis as the district court

6

based upon Mont. R. Civ. P. 56. *Cedar Lane Ranch, Inc. v. Lundberg,* 1999 MT 299, ¶ 15, 297 Mont. 145, ¶ 15, 991 P.2d 440, ¶ 15. The moving party must establish the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Stanton v. Wells Fargo Bank Montana, N.A.*, 2007 MT 22, ¶ 17, 335 Mont. 384, ¶ 17, 152 P.3d 115, ¶ 17. Once a moving party has met its burden, the opposing party must present substantial evidence essential to one or more elements of its case in order to raise a genuine issue of material fact. *Stanton*, ¶ 17. We review a district court's conclusions of law to determine whether they are correct. *Stanton*, ¶ 17.

## DISCUSSION

¶13 Rich argues that a plain reading of the Release limits the effect of the Release to "alleged" malpractice claims that arose prior to the settlement. Relying on § 28-3-301, MCA, she maintains it was the parties' intent *at the time of contracting* that the Release would bar future malpractice claims only insofar as they might apply to the 1993 contract claims. She asserts that (1) the specific mention in the Release of the 1993 complaint overrides the general boilerplate provisions; (2) any ambiguity that exists should be construed against the drafter, ALPS, who provided the form; and (3) the lack of consideration for the bad faith claims demonstrates that there was an intent to bar only the malpractice claims arising from the 1993 contract claim and, therefore, her claims for malpractice against Ellingson relative to her Med Pay and bad faith claims should remain viable.

¶14 ALPS argues that the terms of the Release unambiguously bar future claims such as this one because this claim arises out of Ellingson's legal representation of Rich.

7

ALPS asserts that Rich's reliance on principles of contract interpretation is misplaced, and that her argument about consideration is irrelevant.

¶15   As we have stated many times, where the language of an agreement is clear and unambiguous, and as a result, susceptible to only one interpretation, the court's duty is to apply the language as written. *Doble v. Bernhard*, 1998 MT 124, ¶ 19, 289 Mont. 80, ¶ 19, 959 P.2d 488, ¶ 19.  Both parties refer to this rule of contract interpretation, but reach opposite conclusions.  This does not, however, make the Release ambiguous. "Whether or not an ambiguity exists is a question of law for the court to decide.  [Citation omitted.]  Only where an ambiguity exists may the court turn to extrinsic evidence of contemporaneous or prior oral agreements to determine the intent of the parties. [Citations omitted.]." *Doble*, ¶ 19.

¶16   "An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations."  *Wray v. State Compensation Ins. Fund*, 266 Mont. 219, 223, 879 P.2d 725, 727 (1994) (quoting *Morning Star Enterprises v. R.H. Grover*, 247 Mont. 105, 111, 805 P.2d 553, 557 (1991)).  If the terms of the contract are clear, however, the court must determine the intent of the parties from the wording of the contract alone. *Doble*, ¶ 19.  We also must consider the document as a whole, giving effect to each part in interpreting it, rather than attaching a meaning to a single word not supported by the rest of the document.  Section 28-3-202, MCA.

¶17   Here, the Release clearly and unambiguously bars future claims arising from Ellingson's representation of Rich in her multiple actions against State Farm.  Although

8

Rich contends that the use of the term "[a]lleged" in the "Description of Casualty" provision limits the application of the Release to only claims made prior to the settlement agreement, we find this argument unpersuasive.

¶18 The two plain, everyday meanings of "alleged," are (1) asserted to be true or to exist; and (2) questionably true or of a specified kind. *Webster's Third New International Dictionary, Unabridged* 55 (Philip Babcock Gove, ed., Merriam-Webster, Inc. 2002). Thus, the reference to "alleged legal malpractice" would be understood to mean malpractice asserted but not confirmed to exist, or malpractice that is questionably true. Implying a more temporal meaning would be attaching a greater meaning than the writing expresses. We decline to interpret the term in such a way as would create discordance with the other provisions in the Release.

¶19 From beginning to end, the Release consistently demonstrates the intent of the parties to resolve all disputes arising from Ellingson's representation of Rich, known or unknown, anticipated or unanticipated, regardless of the particular complaint alleged. The sole reservation in the document was for Rich's claims against State Farm for bad faith; no reservations were made as to present or future claims against Ellingson. Rich's present allegation of her past intent, without more, cannot change the unambiguous intent of the Release, as indicated through its express terms. The District Court correctly concluded that the terms of the agreement and Release were clear and unambiguous and that Rich was bound by those terms.

¶20 We likewise reject Rich's assertion that the consideration paid in exchange for the Release was inadequate to encompass all of her possible claims against Ellingson. The

9

Release clearly provided that the amount paid was consideration for "alleged malpractice of any kind." A written instrument is presumptive evidence of sufficient consideration and the burden of attacking the sufficiency of such consideration is on the party seeking to invalidate the instrument. Section 28-2-804, MCA; *Archer v. LaMarch Creek Ranch*, 174 Mont. 429, 435, 571 P.2d 379, 382 (1977). According to a treatise on automobile insurance releases,

> [i]t has been held that the amount paid for the release is not material or open for question provided it has been accepted in full satisfaction and discharge of the claim.

*McCloskey v. Porter*, 161 Mont. 307, 312, 506 P.2d 845, 848 (1973) quoting Blashfield, *Automobile Law and Practice*, vol. 6, § 257.52 (3rd Ed.). Here, Rich provides us with excerpts of the ALPS "Claim Action Summary," which she contends establish that the intent was to cover only the 1993 contract claims. The contents of this internal insurance company document, however, dated weeks before the date the Release was signed, are insufficient to overcome the presumption of sufficient consideration.

¶21 A party's "latent discontent" with a release, without more, is an insufficient basis upon which to premise an alteration of an express agreement. *Hanson v. Oljar,* 231 Mont. 272, 277, 752 P.2d 187, 190 (1988). This is especially so when the document is unambiguous. *Doble*, ¶ 19.

### CONCLUSION

¶ 22 For the foregoing reasons, we conclude that the District Court did not err in entering summary judgment in favor of Ellingson and ALPS. Therefore, we affirm.

10

/S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE