
DA 10-0095

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 217

IN THE MATTER OF THE ESTATE OF

SUE FORD BOVEY, Deceased.

APPEAL FROM: District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDP 88-215
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Kirk D. Evenson; Marra, Sexe, Evenson & Bell, P.C., Great Falls, Montana

For Appellee:

Gregory J. Hatley and James A. Donahue; Davis, Hatley, Haffeman & Tighe, P.C., Great Falls, Montana

Submitted on Briefs:  September 8, 2010

Decided:  October 20, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     This is a dispute over the remainder of the estate of Sue Ford Bovey.

## BACKGROUND

¶2     Sue Ford Bovey died in December, 1988, survived by her only child, Ford Bovey. Sue's will, executed in 1984, was probated in Cascade County proceedings that began in 1988. The will provided that the proceeds of Sue's estate be held in trust by Norwest Capitol Management and Trust Company to provide income for her son Ford. Upon Ford's death Sue's will provided that the trust was to terminate and the remaining assets were to be distributed to Sue's then-living heirs at law. The Estate of Sue Ford Bovey was closed in 1991.

¶3     Ford Bovey died in 1999, and two lawsuits followed seeking to determine who were Sue's then-living heirs at law so as to be entitled to a share of the remainder of the estate. In February, 2000, several individuals who were relatives of Sue Bovey known as the Couch/Faegre claimants filed a petition in Montana District Court in Cascade County to reopen the Estate of Sue Ford Bovey to determine who were her then-living heirs under the will. In March, 2000 Norwest Bank, the successor trustee of the Ford Bovey Trust, filed an action in Montana District Court in Missoula County to determine the identity of Sue's heirs. After Norwest issued summons by publication in that action, Lisa Bovey, who had been adopted by Ford when she was 25, and the Couch/Faegre claimants appeared in the action and made their claims that they were heirs of Sue Bovey. Norwest obtained a default judgment against all persons who failed to appear.

2

¶4 These competing claimants litigated the issue of which court should properly determine the identity of the heirs. In November, 2000 the District Court in Missoula County changed venue of the Norwest action to Cascade County and ordered that it be consolidated with the re-opened probate proceeding. The District Court in Cascade County ordered the two cases consolidated in March, 2001.

¶5 The consolidated action was litigated over a three-year period, culminating in a six-day trial in February, 2004. The District Court in Cascade County concluded that only the seven Couch/Faegre claimants were entitled to the remainder of the trust. Lisa Bovey appealed to this Court and we affirmed. *In Re the Matter of the Estate of Sue Ford Bovey*, 2006 MT 46, 331 Mont. 253, 132 P.3d 510. Thereafter the District Court in Cascade County proceeded with distribution of the trust remainder to the Couch/Faegre claimants, which was commenced in July, 2006 and completed in July, 2007.

¶6 In April, 2007, Christine Carrier, Melissa Reavis and Toni Couch (hereafter referred to as the Carrier claimants), the appellants in this appeal, filed a petition in the District Court of Cascade County to re-distribute the trust remainder that was distributed to the Couch/Faegre claimants. They contended that they were heirs of Sue Ford Bovey entitled to shares of the remainder of the trust equally with the Couch/Faegre claimants. The Couch/Faegre claimants appeared to contest the Carrier claims, and in February, 2010 the District Court in Cascade County granted summary judgment in favor of the Couch/Faegre claimants. The Carrier claimants appeal.

**STANDARD OF REVIEW**

3

¶7    This Court reviews de novo a district court's decision on a motion for summary judgment, applying the same analysis as the district court based upon M. R. Civ. P. 56. *Rich v. Ellingson*, 2007 MT 346, ¶ 12, 340 Mont. 285, 174 P.3d 491.

## DISCUSSION

¶8    *Issue One: Whether there was proper service of process in the prior Missoula County and Cascade County actions.*  The Carrier claimants contend on appeal that the District Court erroneously concluded that Norwest properly served process in the Missoula County action under M. R. Civ. P. 4D.  They conclude that the default taken against all persons who failed to appear in that action was not binding upon them.

¶9    After Norwest filed the action in Missoula County, its attorney filed an affidavit for service by publication in April, 2000 stating that Norwest had engaged the services of a licensed process server but was unable to locate potential heirs of Sue Ford Bovey.  The Clerk of the District Court issued a summons by publication which Norwest published in the *Missoulian* newspaper for three successive weeks.  Lisa Bovey and the Couch/Faegre claimants appeared in the action.

¶10    In August, 2000, Norwest moved for entry of default against all persons who had failed to appear.  At a hearing on August 22, 2000, the District Court granted Norwest's motion and entered the default of all persons who failed to appear.  The Carrier claimants contend on appeal that they are not bound by the default taken in the Missoula County action in 2000 because the service by publication in that action was defective.

¶11    The Carrier claimants contend that they were entitled to actual notice of the Missoula County proceedings commenced by Norwest and later consolidated with the Cascade County

4

action. The District Court concluded that in probate proceedings § 72-1-301, MCA, allows notice of hearings on any petition to be given by mail, by personal delivery of a copy, or by publication. Since Norwest provided notice by publication, the District Court reasoned that the notice requirement of the statute had been met. In addition, the District Court determined that the statute's requirement that "reasonable diligence" be used to locate interested persons prior to resorting to publication had been met, recounting the testimony of Norwest's attorney of the steps he took to locate heirs. Finally, the District Court held that the fact that the Couch/Faegre claimants may have known of the whereabouts of the Carrier claimants was insufficient to bind Norwest and further that an heir has no duty to inform another heir of probate proceedings.

¶12 Norwest's Missoula County action was filed under the Trust Code, specifically referencing §§ 72-35-101 and -301, MCA. The Trust Code, § 72-35-105, MCA, provides that a "court may exercise jurisdiction in proceedings under this division on any basis permitted by Rule 4 of the Rules of Civil Procedure." M. R. Civ. P. 4D(5) provides that jurisdiction may be obtained through service by publication by publishing a summons once each week for three successive weeks in a newspaper published in the county where the action is pending. That is what Norwest did in the action it filed in Missoula County, specifically referencing M. R. Civ. P. 4D in its published summons.

¶13 After service by publication, "any court of this state having jurisdiction" may render a decree to adjudicate the interest of any defendant "in the status, property or thing acted upon …." M. R. Civ. P. 4D(5)(b). Therefore, the default entered against persons who did not

5

appear in the Missoula County action was properly taken and is binding upon the Carrier claimants.

¶14 The Carrier claimants assert that they are not bound by the default in the Missoula County action because Norwest did not strictly comply with notice requirements in the Trust Code. Section 72-35-306, MCA, cited by the Carrier claimants, pertains to notices of the time and place of hearings in Trust Code proceedings, and not to the initial service of process at the commencement of the action. Service of process in Trust Code actions is governed by M. R. Civ. P. 4, as provided in § 72-35-105, MCA.[1]

¶15 The Carrier claimants also contend that if service was made under M. R. Civ. P. 4D then there are other defects that invalidate the process. First they argue that the published summons did not comply with M. R. Civ. P. 4D(5)(h). That section requires that when the action involves title to or any interest in real property, the publication must contain a description of the real property involved. The Carrier claimants point to an appended document listing "Actual Distributions" from the Sue Ford Bovey Trust in 2006 and 2007. The first entry includes $3.5 million designated as cash and $388,132 designated as "real estate." No further information is provided as to the purported real estate involved or whether title to real estate was transferred during the distribution of the trust remainder. It is just as likely that the specific amount of $388,132 represents cash proceeds realized from a prior sale of real estate. In either case this document fails to establish that the distribution involved any specific parcel of real property. Therefore, there is no showing that the

requirements of M. R. Civ. P. 4D(5)(h) applied, much less that this invalidates the summons.

¶16 Second, the Carrier claimants argue that M. R. Civ. P. 4D(5)(c) required Norwest to obtain an order prior to publishing summons. The record on appeal does not contain the pleadings from the Missoula County case filed by Norwest and so there is no basis for determining whether or not Norwest obtained such an order. Further, the cited rule provided at the time the publication occurred that the party wishing to publish summons "may" obtain an order for publication from the judge or clerk.

¶17 Last, the Carrier claimants contend that Norwest did not undertake a sufficiently diligent search to locate them when the Missoula County action was filed. The District Court concluded after the hearing that Norwest used "reasonable diligence … to identify and locate heirs …." The District Court found that Norwest's attorney reviewed the family tree, reviewed records in the Cascade County Clerk of Court, inquired at Norwest, conducted an internet search, and searched phone books for the Missoula and Great Falls areas. Norwest also engaged a process server who was apparently unable to locate any Sue Ford Bovey heirs. While the Carrier claimants can now describe additional steps that could have located them, M. R. Civ. P. 4D(5)(c) requires that the party serving summons by publication undertake "due diligence" to find unidentified persons. The District Court specifically found here that Norwest exercised due diligence. In addition, the rule provides that an affidavit reciting "the fact that diligent inquiry was made" is sufficient evidence of diligent inquiry, and that the affidavit "need not detail the facts constituting such inquiry." The District

_____

[1] The District Court concluded that service of process by Norwest met the requirements of M. R. Civ. P. 4D and of § 72-1-301, MCA. While that statute does not govern service of process but rather

7

Court's factual conclusions on this issue were based upon sufficient evidence and the legal conclusion was consistent with the rule.

¶18 Because there was sufficient service of process in the Norwest case filed in Missoula County, there was no requirement that Norwest or any other person re-serve process after venue was changed to Cascade County and after consolidation with the pending probate case in Cascade County. After service by publication, "any court of this state having jurisdiction may render a decree which will adjudicate any interest of such defendant in the status, property, or thing acted upon ...." M. R. Civ. P. 4D(5)(b). The District Courts in both Missoula County and Cascade County properly exercised jurisdiction over the case.

¶19 *Issue Two: Were the Carrier claims barred by laches?* Laches is an equitable concept that precludes enforcement of a right where there has been an unexplainable delay in asserting the right, and is appropriate when the party is actually or presumptively aware of his rights but fails to act. *Cole v. State ex rel. Brown*, 2002 MT 32, ¶¶ 24-25, 308 Mont. 265, 42 P.3d 760. There is no absolute rule as to what constitutes laches and each case must be determined according to its own facts. *In re Estate of Wallace*, 186 Mont. 18, 25, 606 P.2d 136, 140 (1980). Laches applies when the delay has prejudiced the opposing party and the delay is such that enforcement of the asserted right would be inequitable. *Montanans for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶¶ 23, 25, 334 Mont. 237, 146 P.3d 759. Equity aids only the vigilant. *Cole*, ¶ 25.

¶20 The District Court found that petitioners Carrier and Reavis had specific knowledge going back to 1989 that Sue Ford Bovey had died leaving a substantial estate and that they

service of notice of hearing, the District Court reached the correct conclusion under the rule.

were potential heirs. They both knew that the estate would not be fully distributed until the death of Ford Bovey. The District Court further found that Carrier was aware of Ford's death by 2000 and Reavis by at least 2004. Both also had actual knowledge in 2003 and 2004 of the litigation between Lisa Bovey and the Couch/Faegre claimants over the remainder of the trust after Ford's death.

¶21    The District Court summarized the relevant timeline:

> Sue died in 1988; the estate was probated 1988 to 1991; Carrier and Reavis were on notice of their potential claims as early as 1989; Ford died in 1999; the probate was reopened and the trust proceeding commenced in 2000; notice and default occurred and the estate litigation essentially began in 2000; extensive publicity concerning the matter occurred in 2003 and 2004; judgment was entered in 2004; the case was appealed and the Supreme Court opinion rendered in 2006; distribution was authorized and occurred in June 2006. Only after all that did Petitioners make their first appearance in this case April 16, 2007.

The District Court contrasted this with the Couch/Faegre claimants who appeared in response to the published summons in 2000, hiring attorneys and enduring a "long and tortured history of pleadings, motions and hearings." The District Court concluded that the Couch/Faegre claimants "alone bore the burdens of the prior litigation, even while Petitioners Carrier and Reavis were aware it was taking place. To require Respondents to disgorge part of the inheritance after distribution would be inequitable and inherently prejudicial."

¶22    As to petitioner Couch, she left the Great Falls area in the early 1990s and essentially disappeared from her family from 1993 until 2006. The District Court concluded that even if laches did not apply to her, an "even stronger case for notice" did apply. One of the reasons

9

that M. R. Civ. P. 4D allows for publishing summons is because there are persons like Couch who are literally and practically missing or unknown or both.

¶23 The claimants have not made any substantial showing that the District Court's findings or its conclusion that their claims were barred by laches were in error.

¶24 *Issue Three: Should a share of the Sue Ford Bovey trust remainder have escheated to the State of Montana?* Claimants contend that any other issue in this case is a "red herring" because three-tenths of the trust remainder should have escheated to the State of Montana to be held for their benefit. The Escheated Estates Act provides that in certain situations property escheats to and vests in the State of Montana.

> Whenever the title to any property, either real or personal or mixed, fails for any reason, including want of heirs or next of kin, the title vests in the state of Montana immediately upon the death of the owner without an inquest or other similar proceeding and there is no presumption that the owner died leaving heirs or next of kin.

Section 72-14-102, MCA.

¶25 Section 72-14-102, MCA, is determinative of this issue. Title to the property in the trust remainder did not fail and there was no want of heirs or next of kin. To the contrary, numerous next of kin appeared and litigated their respective entitlements. There was no basis for escheating any portion of the trust remainder.

¶26 *Issue Four: Was the action by the Carrier claimants barred by the applicable statute of limitations?* Since we have upheld the District Court's decision on other grounds we do not reach this issue.

¶27 In conclusion, because there was sufficient service at the commencement of the Norwest action in Missoula County, and the Carrier claimants failed to appear, they are

10

bound by the default taken in that action and by the distribution of the trust remainder to the Couch/Faegre claimants. Moreover, the claims of the Carrier claimants are barred by laches.

¶28 The District Court is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice Patricia O. Cotter specially concurs.

¶29 In light of our determination that the District Courts in Missoula and Cascade Counties properly exercised jurisdiction over the Appellants, and that the entry of their defaults was therefore binding, I find it unnecessary to resolve the merits of their remaining arguments. Accordingly, I would not reach Issues Two through Four. That said, I do not disagree with the outcome the Court reaches on these issues. I therefore specially concur.

/S/ PATRICIA COTTER

Justice Jim Rice joins the Special Concurrence of Justice Patricia O. Cotter.

/S/ JIM RICE