DA 12-0246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 320

HORACE MANN INSURANCE COMPANY,

      Plaintiff and Appellee,

v.

ROBERT HANKE AND REBECCA HANKE,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Broadwater, Cause No. DV-2009-50
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Geoffrey C. Angel, Angel Law Firm; Bozeman, Montana

      For Appellee:

          G. Trenton Hooper, Eric N. Peterson, Crowley Fleck PLLP; Billings, Montana

Submitted on Briefs:  September 11, 2013
Decided:  October 29, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Robert Hanke (Robert) and Rebecca Hanke (collectively the Hankes) appeal the order of the First Judicial District, Broadwater County, that granted summary judgment to Horace Mann Insurance Company (Horace Mann) on the insurance coverage issue, and the separate order that reimbursed Horace Mann and awarded attorney's fees to Horace Mann under the Uniform Declaratory Judgment Act. We affirm in part, reverse in part, and remand.

¶2     We address the following issues on appeal:

    *1.     Whether the District Court properly granted summary judgment in favor of Horace Mann when it determined that the Hankes' insurance policy failed to cover the Warner dispute?*

    *2.     Whether the District Court properly determined that Horace Mann's decisions to provide a defense and to pay the settlement of Warner's claims nevertheless allowed Horace Mann to pursue reimbursement for the Hankes' share of the settlement?*

    *3.     Whether the District Court properly awarded attorney's fees to Horace Mann under the Uniform Declaratory Judgment Act's supplemental relief provision?*

### PROCEDURAL AND FACTUAL BACKGROUND

¶3     The dispute leading to the immediate appeal began when the Hankes offered space to Thomas Warner (Warner) to store personal belongings following Warner's eviction from his residence in Bozeman in 2004. Warner accepted the Hankes' offer. Warner stored his property in a small shed on the Hankes' property, near Three Forks in Gallatin County. Robert and Warner apparently made an oral agreement. Robert and Warner did not commit this agreement to writing. The Hankes maintained home insurance coverage from Teachers Insurance, a subsidiary of Horace Mann during this time.

¶4     A fire completely destroyed the Hankes' home on April 20, 2005. As a result, Robert moved into a separate, larger shed on the property with his two sons. Rebecca Hanke and her daughter moved to a house in Belgrade. Robert and his sons began using Warner's personal property shortly thereafter. Robert sent Warner a letter in August 2005 in which he claimed that Warner had breached the agreement that the two previously had reached. Robert asserted ownership over Warner's property as a result of Warner's alleged breach.

¶5     Warner filed an action against the Hankes for theft, conversion, and negligence in withholding Warner's property on April 9, 2007. Warner also sought punitive damages. The Hankes retained private counsel and responded to Warner's allegations. The Hankes failed to file a claim with Horace Mann to request a defense at that time.

¶6     The Hankes finally filed a claim with Horace Mann to request a defense against Warner's suit on December 1, 2008. Horace Mann investigated a defense for the Hankes, with a full reservation of Horace Mann's rights. Horace Mann agreed to assume the defense after investigation, with a full reservation of rights. Horace Mann retained new counsel to defend the Hankes.

¶7     The new counsel that Horace Mann provided for the Hankes arranged for a settlement conference to attempt to resolve Warner's claims. Warner agreed to settle his claims for $54,000.00 at the conference. The Hankes agreed to pay $34,000.00 and Horace Mann agreed to contribute $20,000.00. The Hankes failed to obtain a loan to cover their $34,000.00 share. Horace Mann and the Hankes later reached an agreement whereby Horace Mann would advance the Hankes' $34,000.00 share. Horace Mann advanced the Hankes'

3

contribution to the settlement subject to a full reservation of rights. The payment settled Warner's dispute with the Hankes.

¶8 Horace Mann filed a declaratory judgment action against the Hankes before the settlement conference. Horace Mann requested that the District Court determine whether the Hankes' insurance policy required Horace Mann to defend the Hankes. Horace Mann and the Hankes filed cross-motions for summary judgment in the declaratory judgment action.

¶9 The District Court determined that the Hankes' insurance policy excluded coverage for damage to Warner's personal property that had resulted from intentional acts. The District Court found that the Hankes intentionally had taken possession and intentionally had claimed ownership of Warner's property. The District Court also determined that "[t]he incidental liability coverage contains a similar exclusion." The District Court further determined that the "Hankes' taking possession and claiming ownership of Warner's property was just such an intentional act." The District Court concluded, therefore, that Horace Mann did not owe coverage to the Hankes for the Warner dispute.

¶10 Horace Mann requested that the District Court grant the costs of the defense that it had provided to the Hankes in the Warner dispute. Horace Mann further requested reimbursement for the $34,000.00 that Horace Mann had paid on behalf of the Hankes to settle the Warner dispute. Horace Mann lastly sought its attorney's fees and costs resulting from the declaratory judgment action.

¶11 The District Court denied Horace Mann any reimbursement of attorney fees and costs in the Warner dispute. The District Court awarded $34,000.00 to Horace Mann, however, to

4

reimburse Horace Mann for its contribution to the settlement in the Warner dispute. The District Court further awarded $48,131.50 in attorney's fees to Horace Mann for the declaratory judgment action. The Hankes appeal.

## STANDARD OF REVIEW

¶12 We review de novo a district court's ruling on a motion for summary judgment. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149. This Court reviews for correctness a district court's decision as to whether legal authority exists to award attorney fees. *Hughes v. Ahlgren*, 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439. We review for an abuse of discretion a district court's order to grant or deny attorney fees if legal authority exists for the fees. *Hughes*, ¶ 10.

## DISCUSSION

¶13 *Whether the District Court properly granted summary judgment in favor of Horace Mann when it determined that the Hankes' insurance policy failed to cover the Warner dispute?*

¶14 The District Court analyzed both the property coverage and liability coverage provisions of the Hankes' insurance policy to determine whether the Hankes' insurance policy covered their claim. The District Court also examined the policy exclusions under each source of coverage. The District Court concluded that Robert's intentional acts excluded the Hankes' claim under either provision. The Hankes assert that the District Court should have relied exclusively upon the incidental liability language that includes coverage for damage to other's property. We examine separately each potential source of coverage and the accompanying exclusions.

5

¶15     The personal property provision of the Hankes' insurance policy provides that "[Horace Mann] cover[s] personal property . . . in the care of an insured." The damaged property at issue undisputedly remained in the care of the Hankes. The relevant exception to the personal property provision excludes, however, "loss which results from an act committed by . . . an insured. This includes any loss which is expected or intended by an insured." The District Court determined that the Hankes intentionally appropriated and took control of Warner's personal property. These intentional acts, according to the District Court, led directly to the damage at issue.

¶16     The Hankes argue that the District Court should have examined another coverage relevant to their claim: "[r]egardless of an insured's legal liability, [Horace Mann] pay[s] for property of others damaged by an insured." The Hankes argue that this provision applies "regardless of the Hankes' legal liability." This claim requires us to examine the exclusion relevant to liability coverage in the Hankes' policy. The exclusion provides that "[Horace Mann] do[es] not pay for damage to property . . . caused intentionally by an insured who has attained the age of 13."

¶17     The Hankes contend that Horace Mann should have covered any damage to Warner's property under this standard. The Hankes suggest that the "underlying conduct" that caused the damage to Warner's personal property had not been intentional, but instead had resulted from negligent acts. The Hankes claim that much of the underlying conduct that caused damage to Warner's personal property had been the fault of the Hankes' young children.

6

The exception for intentional acts applies only to "an insured who has attained the age of 13." None of the Hankes' children "ha[d] attained the age of 13."

¶18 Similar to the District Court, we need not determine whether the Hankes' young children acted negligently. Robert performed an intervening intentional act before his children allegedly damaged any of Warner's personal property. Robert claimed ownership of Warner's personal property in a letter to Warner on August 26, 2005, and further declared that the Hankes would use that property. The Hankes' children had access to Warner's personal property only due to the fact that Robert intentionally had claimed ownership and intentionally had used Warner's property for his own purposes.

¶19 The Hankes next argue that they potentially retained Warner's personal property with Warner's permission. The record directly contradicts this claim. The substance of Robert's August 26, 2005, letter to Warner makes clear that the Hankes' had taken Warner's property due to "[Warner's] default on our original agreement." Robert clearly informed Warner that "your property became mine." Robert further declared that the Hankes "used Thomas Warner's personal property" in an affidavit. These circumstances indicate no consent on Warner's part to the Hankes' use of his personal property.

¶20 Thus, Robert committed two intentional acts that exclude coverage. The first intentional act involves Robert's decision to take possession of Warner's property. Robert's second intentional act occurred when he claimed ownership of Warner's personal property. The damage to Warner's personal property occurred due to Robert's intervening acts of taking possession and claiming ownership. These intentional acts triggered the exception to

7

the Hankes' insurance policy that excludes coverage for damage caused intentionally by an insured. Robert's intentional acts also extinguished any potential coverage that could have been available to apply to any later allegedly negligent acts by the Hankes' young children or others.

¶21 We further note that an additional exclusion to the Hankes' incidental liability provision excludes coverage for "damage to property that is . . . used by . . . an insured." This exclusion also appears to exclude from coverage any personal liability that Robert incurred when he damaged Warner's property after Robert had taken possession and claimed ownership of Warner's property. The District Court did not rely on this exclusion. The Hankes entirely ignored this exclusion. Horace Mann suggested only this exclusion "interestingly" applied. The Hankes used the personal property at issue as evidenced by Robert Hankes' affidavit. Robert Hanke testified that "we used Thomas Warner's personal property." This separate exclusion supports the District Court's determination that no coverage exists. We decline to uphold coverage under the terms of the policy. *Safeco Ins. Co. of Am. v. Liss*, 2000 MT 380, ¶ 32, 303 Mont. 519, 16 P.3d 399. The District Court properly granted summary judgment to Horace Mann.

¶22 *Whether the District Court properly determined that Horace Mann's decisions to provide a defense and to pay the settlement of Warner's claims nevertheless allowed Horace Mann to pursue reimbursement for the Hankes' share of the settlement?*

¶23 The Hankes next claim that Horace Mann took control of the defense, deprived the Hankes of their preferred counsel, and settled the case without respecting the Hankes' opportunity to have a jury determine the factual issues. The Hankes argue that these

8

decisions should bind Horace Mann. The Hankes posit that Horace Mann may not now seek reimbursement for the settlement advancement that Horace Mann chose to provide.

¶24 The Hankes ask this Court to disregard the insurer's well-established duty to defend. An insurer's duty to defend its insured arises when an insured sets forth facts that present a risk that possibly would be covered by the terms of an insurance policy. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, 90 P.3d 381. An insurer owes a duty to defend unless the insurer unequivocally demonstrates that the claim against the insured falls outside the policy coverage. *Staples*, ¶ 22.

¶25 An insurer should provide the insured a defense under a reservation of rights if the insurer believes that a question exists about the boundaries of coverage. The insurer then may file a declaratory judgment action to resolve coverage issues. *Staples*, ¶ 28. The insurer may seek to recover the expenses that the insurer incurred in defending a claim outside of the insured's policy coverage in the declaratory judgment action. *Staples*, ¶ 28. An insurer's failure to follow this course leaves the insurer potentially liable for defense costs and judgments. *Staples*, ¶ 27; § 28-11-316, MCA.

¶26 Horace Mann assumed the duty to defend the Hankes. Horace Mann informed the Hankes in writing on December 24, 2008, on February 26, 2009, and on April 22, 2009, that Horace Mann reserved all rights in investigating the Hankes' claim, and in providing a defense. The Hankes accepted the defense that Horace Mann had offered. Horace Mann's new counsel arranged for a settlement conference on January 29, 2010.

9

¶27 Robert, Rebecca Hanke, the new counsel that Horace Mann provided, Warner, and Warner's counsel attended the settlement conference. Warner's attorney negotiated the settlement amount to $54,000.00. Horace Mann offered to contribute $20,000.00 toward that amount. The Hankes "were expected to pay $34,000" of their own money to facilitate the $54,000.00 settlement. The Hankes unsuccessfully sought to obtain a loan for $34,000.00 to fund their obligation under the terms of the settlement. Horace Mann agreed to "fund the $34,000 owed by the Hankes" under the settlement agreement that the Hankes and Warner had reached. Horace Mann covered the Hankes' $34,000.00 obligation under the settlement agreement without any assurance that it ever would be able to recover the advanced funds from the Hankes.

¶28 Horace Mann reserved in writing on April 20, 2010, its right to recover the cost of settlement upon advancing the Hankes' their $34,000.00 contribution. Horace Mann specifically announced that its payment of "the Hankes' obligation" would be subject to Horace Mann's full reservation of rights. Horace Mann argues that it paid the Hankes' $34,000.00 obligation in furtherance of its agreement with the Hankes. The Hankes fail to identify any evidence in the record that would suggest otherwise. The Hankes make only the general assertions that "[n]o amount of evidence now will prove what Warner may have proved against Hankes or they may have proved in defense" and that "no determination of fault or intent was made by a jury because Horace Mann decided it would pay the entire settlement." The record suggests that Horace Mann advanced funds exclusively because of its agreement with the Hankes.

¶29 The Hankes received the full benefit of Horace Mann's strict adherence to the procedure that this Court has established. Horace Mann had reserved rights on multiple occasions in varying scope. Horace Mann reserved only "rights as allowed under the policy contract" in letters on December 24, 2008 and February 26, 2009. Horace Mann reserved substantially more broadly "the right to withdraw from the defense *and indemnity*" in a letter on April 22, 2009 (emphasis added). Horace Mann reserved specifically "the right to recover defense and settlement costs" in a letter on April 20, 2010, upon payment of the Hankes' settlement claims.

¶30 The Dissent takes issue with Horace Mann's failure to use the word "settlement" in an earlier letter, and its choice to use the word "costs" in conjunction with "settlement," in Horace Mann's April 20, 2010, letter. Dissent, ¶ 41. The "indemnity" language in the April 22, 2009, letter encompasses clearly, however, Horace Mann's potential ability to recoup any amounts advanced. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶¶ 48-50, 326 Mont. 174, 108 P.3d 469. Horace Mann sent this letter to the Hankes nearly twelve months before the parties reached a settlement. *Ribi Immunochem*, ¶¶ 48-50.

¶31 The correspondence between Horace Mann and the Hankes and their counsel establishes that Horace Mann reserved its right to recover the additional $34,000.00 that it paid to the settlement with Warner. Horace Mann protected the Hankes' $54,000.00 settlement in furtherance of Horace Mann's agreement with the Hankes. Horace Mann adhered to the procedure that this Court has established to contest the boundaries of coverage and to recoup expenses. *Ribi Immunochem*, ¶¶ 48-50. We affirm the District Court's award

11

of $34,000.00 to reimburse Horace Mann for its advancement of the Hankes' share of the settlement.

¶32 *Whether the District Court properly awarded attorney's fees to Horace Mann under the Uniform Declaratory Judgment Act?*

¶33 The District Court determined that the Uniform Declaratory Judgments Act's supplemental relief provision supported an award of $48,131.50 in attorney's fees to Horace Mann. A party in a civil action generally may not recover attorney's fees absent a specific contractual or statutory provision that allows for those fees. *Trustees of Indiana University v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663. Section 27-8-313, MCA, authorizes a party to petition for supplemental relief based on a declaratory judgment "whenever necessary and proper."

¶34 We determined in *Buxbaum* that an award of attorney's fees falls within the scope of the supplemental relief authorized by § 27-8-313, MCA. *Buxbaum*, ¶ 46. We later clarified that a district court may award attorney fees in a declaratory relief action under § 27-8-313, MCA, only if equitable considerations support that award. *United Nat. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 38, 352 Mont. 105, 214 P.3d 1260. Once the district court finds equitable considerations, the district court then must find that an award would be necessary and proper. *United Nat. Ins. Co.*, ¶ 38. The court first must conclude that support for the award rests in equity, however, before the necessary and proper inquiry triggers. *United Nat. Ins. Co.*, ¶ 38.

12

¶35 We have limited the circumstances under which a court may award attorney's fees in a declaratory judgment action. *See United Nat. Ins. Co.*, ¶ 39; *Hughes*, ¶ 21; *Baxter v. State*, 2009 MT 449, ¶ 48, 354 Mont. 234, 224 P.3d 1211. In fact, only once have we upheld an award of attorney's fees in a declaratory relief action under § 27-8-313, MCA. *Renville v. Farmers Ins. Exch.*, 2004 MT 366, ¶ 28, 324 Mont. 509, 105 P.3d 280. We have never determined that equity supported an attorney's fees award for an insurer who makes the "tactical decision" to file a declaratory judgment in the normal course of assuming its duty to defend. *United Nat. Ins. Co.*, ¶ 37.

¶36 A jury awarded Renville damages for injuries that she had suffered as a passenger in a car accident. *Renville*, ¶ 7. Farmers Insurance Exchange (Farmers) withheld payment on a portion of Renville's award even after this Court had affirmed the award. *Renville*, ¶¶ 8-18. Renville sought declaratory relief to recover unpaid damages from Farmers. *Renville*, ¶ 10. The district court granted declaratory relief and awarded Renville her attorney fees under § 27-8-313, MCA. *Renville*, ¶ 18. The district court reasoned that Renville had accrued substantial attorney's fees in order to recover a small damages award. *Renville*, ¶¶ 18, 28. We agreed that the attorney's fees award prevented the anomalous result of Renville having been better off had she never brought the claim. *See United Nat. Ins. Co.*, ¶ 38. *Renville* represents an outlier where equity supported an award of attorney's fees. *United Nat. Ins. Co.*, ¶ 38, quoting *Buxbaum*, ¶ 46. Horace Mann's circumstances here accordingly differ dramatically from *Renville*.

13

¶37 An insurer in the normal course of coverage may elect to fulfill its duty to defend by providing coverage to an insured and later contesting the boundaries of that coverage in a declaratory judgment action. *Staples*, ¶ 28. Horace Mann, acting in the normal course of business, elected to fulfill its duty to provide a defense to the Hankes subject to a reservation of rights. An insurer may recover its defense costs for the underlying action when it ultimately has no duty to defend. *Ribi Immunochem*, ¶ 50. The District Court denied Horace Mann's attempt to recoup its defense costs expended on the Hankes' behalf in the action brought by Warner, however, due to Horace Mann's failure to provide timely notice to the Hankes of its intent to recoup these costs in the event that no coverage existed.

¶38 Horace Mann, also acting in the normal course of business, made the "tactical decision" to file a declaratory judgment action to determine definitively its coverage obligations. *Staples*, ¶ 28. These actions by Horace Mann support the District Court's decision to recompense Horace Mann for its contribution to the settlement with Warner. These acts fail to rise to the level, however, that would prompt an award of attorney's fees to Horace Mann in the declaratory judgment action pursuant to the analysis in *Renville*. Horace Mann simply acted in the normal course of business that an insurer would take when it exercises its duty to defend under a reservation of rights. The record fails to support an award of attorney's fees to Horace Mann under the extreme circumstances presented in *Renville*. *See United Nat. Ins. Co.*, ¶ 39. We need not analyze whether the award was necessary and proper under the analysis in *Buxbaum*. *See United Natl. Ins. Co.*, ¶ 38.

14

¶39    We reverse the District Court's award of attorney fees to Horace Mann and remand for further proceedings.

/S/ BRIAN MORRIS

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER

Justice Patricia Cotter concurring in part and dissenting in part.

¶40    I concur in the Court's resolution of Issues One and Three. I dissent from the Court's resolution of Issue Two. I would conclude that because it did not provide specific notice to Hankes prior to mediation and settlement that it intended to seek reimbursement of its contribution to any settlement, Horace Mann may not now recover its contribution to the settlement.

¶41    As the District Court noted in its order addressing indemnification and fees, the first several letters written by Horace Mann to the Hankes undertaking their defense did not alert the Hankes of the possibility of nor the explicit reservation of the right to seek reimbursement. In fact, it was not until its letter of April 20, 2010, that Horace Mann first explicitly mentioned a right to reimbursement. This letter stated: "Horace Mann's payment of the Hankes' obligation [to fund the $34,000 owed by the Hankes under the settlement agreement reached at mediation] is made under a full reservation of rights, including the right to recover defense and settlement costs should the [c]ourt rule in the declaratory

15

judgment action that there is no coverage." Notably, this letter was sent three months after the mediation at which the parties settled the Warner claims.

¶42 The District Court cited with approval the case of *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶¶ 48-50, 326 Mont. 174, 108 P.3d 469, in which we held that insurers may recover the costs of defending and indemnifying their insured against uncovered claims, in certain circumstances. We said that these costs are recoverable, where the insurer:

(1) timely and explicitly reserved the right to recoup the costs; and
(2) provided specific and adequate notice to the insured of the possibility of reimbursement.

Relying upon this test, the District Court properly concluded that because Horace Mann did not notify Hankes that it could later seek reimbursement for the defense costs until well after those costs had been expended, it had failed to meet its obligation to specifically and timely inform them that it would seek to recoup those amounts. I agree with this conclusion. The District Court and this Court go awry, however, in concluding that Horace Mann timely and explicitly advised Hankes that it would seek to recover the contribution it made to the settlement of the Warner claim.

¶43 As noted above, the April 20, 2010 letter in which Horace Mann agreed to provide the remaining $34,000 toward the settlement on behalf of the Hankes stated it was doing so under a full reservation of rights, "including the right to recover defense and settlement *costs*" should the court determine in the declaratory action that there was no coverage for the

16

Warner claims. (Emphasis added.) This letter does not timely or explicitly alert the Hankes that it intended to recoup the amounts advanced toward the settlement of the Warner claim.

¶44 The Legislature defines the costs generally allowable to a prevailing party. Section 25-10-201, MCA, states that the allowable costs are the parties' "necessary disbursements," to include legal fees of witnesses; the expenses of taking depositions; legal fees for publication; fees paid to stenographers for filing and recording papers; expenses of printing papers for hearing; and "other reasonable and necessary expenses that are taxable according to the course and practice of the court or by express provision of law." Nowhere in Montana statute or case law are "costs" defined to include an insurer's contribution to a settlement.

¶45 Given that *Ribi* addresses a claim for reimbursement of defense costs, and not claims for reimbursement of settlement amounts, it is arguably not even applicable here. However, there are no reported Montana cases in which this Court has approved a claim for reimbursement of a settlement contribution by an insurance company operating under a reservation of rights. I submit that a parallel version of the *Ribi* test should apply where an insurer later seeks to recover the amount it paid in settlement of a claim after there is a determination that it has no duty to indemnify. I would conclude that an insurer may later recover monies it paid in the settlement of a claim against the insured, provided the insurer (1) timely and explicitly reserved the right to recoup the settlement amount; and (2) provided specific and adequate notice to the insured of the possibility of reimbursement.

¶46 Here, in advising the insured that it reserved the right to recover defense and settlement costs, Horace Mann did not meet the foregoing test. First, it did not timely and

17

explicitly reserve the right to recoup the settlement amount, as it did not address reimbursement of any sums until months after the mediation. Second, it did not provide specific and adequate notice to the insured of the possibility that it would seek reimbursement of the settlement amount. I would conclude that Horace Mann was not entitled to secure reimbursement of its contribution to the settlement with Warner. I therefore dissent from the Court's resolution of Issue Two.

¶47 I otherwise concur.

/S/ PATRICIA COTTER