DA 14-0442

FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0442

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 183

BILL BEEBE, as Co-Trustee of the
Katherine F. Beebe Revocable Trust,

       Petitioner and Appellee,

  v.

THE BOARD OF DIRECTORS OF
THE BRIDGER CREEK SUBDIVISION
COMMUNITY ASSOCIATION,
an unincorporated association,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 12-766C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Eric Edward Nord, Tanis M. Holm, Crist, Krogh, Butler & Nord, LLC,
Billings, Montana

       For Appellee:

              Alanah Griffith, Griffith Law Group Bozeman, Montana

                         Submitted on Briefs:  March 18, 2015
                                   Decided:  June 30, 2015

Filed:

                                 Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1      The Board of Directors (Board) of the Bridger Creek Subdivision Community Association (Association) appeals an order issued by the Eighteenth Judicial District Court, Gallatin County, granting declaratory judgment and attorney fees and costs in favor of Appellee Bill Beebe (Beebe), the Co-Trustee of the Katherine F. Beebe Revocable Trust. We affirm in part and reverse in part.

¶2      The Board raises two issues on appeal, which we restate as follows:

1. *Whether the District Court erred in granting declaratory judgment in favor of Beebe.*

2. *Whether the District Court erred in awarding attorney fees and costs to Beebe.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      The Association was an unincorporated community association located in Gallatin County when this suit commenced. However, during the course of this litigation, the Association became a Montana non-profit corporation. The Board is charged with governing the Association in accordance with the Association's Covenants and Bylaws.[1]  Beebe, as co-trustee of his wife's trust which owns a home in the subdivision, is a member of the Association. The present dispute arises out of the interpretation of the Association's Covenants and Bylaws.

¶4      On October 16, 2012, Beebe filed a petition for declaratory relief. The Board answered and counterclaimed for unpaid homeowner assessments and dues. On February

---

[1]  We refer to the Association's governing documents collectively as the Covenants and Bylaws, which, according to the record, consist of three parts:  Part I – Covenants and Restrictions; Part II–Bylaws; and Part III–Design Regulations.  For purposes of this Opinion, we examine articles found in Part I and Part II only and refer to those parts individually as either Covenants or Bylaws.

2

12, 2013, Beebe filed a motion requesting a declaratory judgment supporting his interpretation of certain provisions in the Covenants and Bylaws that concern the Association's collection of assessments from its members.

¶5      The pertinent portions of the Covenants addressing assessments are as follows:

ARTICLE VI
ASSESSMENTS

SECTION 1.  The Declarant for each lot owned by it within Bridger Creek Subdivision hereby covenants, and each Owner of any lot by acceptance of a purchase and sale agreement, deed or lease therefore, whether or not it shall be so expressed in any such deed, lease or any other conveyance, shall be deemed to covenant and agree to pay to the Association **his proportionate share of maintenance established and collected** form [sic] time to time as hereinafter provided.

.    .    .

SECTION 2.  The Owner's proportionate share of the **maintenance and special assessments** shall be assessed in the following manner:

.    .    .

SECTION 4.  The **maintenance assessments** levied by the Association **shall be used exclusively for the purpose of financing the Association functions and duties,[.]  Assessments shall include but not be limited to maintenance of fences, trails, linear park, weed controls and other improvements.**

.    .    .

SECTION 5.  If at any time and from time to time during any fiscal year, **the maintenance assessment** proves inadequate for any reason, including nonpayment of any Owner's share thereof, the Board may levy a further assessment in the amount of such actual or estimated inadequacy which shall be assessed to the Owners in the manner set forth in Section 2 of Article VI. SECTION 6.  **In addition to the maintenance assessment authorized above, the Association may levy, in any assessment year, a special assessment applicable to that year only for the purpose of defraying, in whole or in**

**part, the cost of any construction, reconstruction, repair or replacement of a capital improvement upon the Parkland and Linear Trail System**, including fixtures and personal property related thereto, **provided that any such assessment shall have the assent of two-thirds (2/3) of the votes of each class of members** who vote in person or by proxy at a meeting duly called for this purpose. For the purpose of this section in [an] [sic] owner will be allowed a number of votes equal to the number of dwelling units assessed to his/her at the time of the proposed election.

(emphasis added).

¶6      Beebe alleged that the Association bypassed the Covenants and Bylaws' approval procedure when it used maintenance funds for the construction of a trail project along McIllhatten Road adjacent to the subdivision. Beebe argued that this project constituted a capital improvement that would be subject to a special assessment and not a maintenance assessment, thus requiring compliance with the Covenants and Bylaws' approval procedure identified in Article VI, Section 6. He alleged that the Association failed to follow the special assessment approval procedure when collecting funds to pay for the trail project.

¶7      On April 1, 2013, the Board filed a cross-motion for summary judgment arguing that the trail project did not require a special assessment and that it had otherwise complied with the Covenants and Bylaws. The Board also requested summary judgment on its counterclaim against Beebe for his failure to timely pay homeowner assessments and dues.

¶8      On November 25, 2013, the District Court granted Beebe's motion for declaratory judgment concluding that Beebe's interpretation of the Covenants was correct as a matter of law, and denied the Board's cross-motion for summary judgment. The court stated:

> In order for the Board to collect and spend funds on capital improvements, each year the Association would like to spend money on improvements, the Association must hold a vote and receive two-thirds approval, as directed in Article VI, Section 6 of the Covenants.

4

The court agreed with Beebe that the funds must be used within a year of the vote. In addition, the court granted the Board's motion for summary judgment on its counterclaim for dues and assessments, and awarded the Board reasonable attorney fees and costs associated with that claim, pursuant to the Article VI, Section 8 of the Covenants, which states:

> SECTION 8. Each assessment under this Article VI shall be a separate, distinct and personal debt and obligation of the Owner against who it is assessed, and each Owner by acceptance of a purchase and sale agreement, deed or lease, shall be deemed to covenant and agree to pay the same to the Association. If the Owner does not pay such assessment or any installment thereof when due, the Owner shall be deemed in default and the amount of the assessment not paid, together with the amount of any subsequent default, plus interest at 12% per annum and costs, including reasonable attorney's fees, shall be and become a lien upon the lot of such Owner upon recordation by the Association of a notice of default. . . .

The amount of the award to the Board was to be determined at a later evidentiary hearing.

¶9      On December 20, 2013, Beebe filed a motion requesting attorney fees and costs based on the premise that he was the prevailing party in his declaratory relief action. The court granted Beebe's motion, reasoning that just as the Board was entitled to recover reasonable attorney fees and costs on its counterclaim involving Beebe's failure to pay his assessments and dues, Beebe had a reciprocal right to recover reasonable attorney fees and costs for the Board's misapplication of the Covenants, citing § 28-3-704, MCA (Contractual right to attorney fees treated as reciprocal), and Article VI, Section 7 of the Covenants, which states:

> SECTION 7. The Board shall also levy an assessment against any Owner, as a direct result of whose acts or failure or refusal to act or otherwise to comply with the Bridger Creek Subdivision Covenants, the Bridger Creek Subdivision Rules or the Committee Rules, for monies expended by the Association in performing its functions under the Bridger Creek Subdivision. Such assessment shall be in the amount so expended and shall be due and payable to the Association when levied. Monies so expended shall include, without

limitation, reasonable engineers'[,] architects', attorneys' and accountants' fees incurred by the Association.

¶10　The court dismissed Beebe's alternative argument that he was entitled to attorney fees and costs under the Uniform Declaratory Judgment Act, § 27-8-313, MCA (UDJA). The amount of Beebe's award was to be determined at a later evidentiary hearing.

¶11　Subsequently, each party submitted affidavits in support of their respective requests for fees and costs. Beebe requested $8,315.50, and the Board requested $1,986.75. On May 21, 2014, prior to an evidentiary hearing, the parties stipulated to the requested amounts but preserved the right to appeal the opposing party's entitlement to attorney fees and costs. The District Court entered a final judgment including the award of the stipulated fees and costs to each party, on June 9, 2014. The Board appeals.

## STANDARDS OF REVIEW

¶12　"Our standard of review pertaining to a district court's conclusions of law, in rendering a declaratory judgment, is to determine if the court's interpretation of the law is correct." *Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶ 10, 329 Mont. 511, 127 P.3d 359 (quoting *City of Great Falls v. Dir. of the Dep't of Pub. Health & Human Servs.*, 2002 MT 108, ¶ 10, 309 Mont. 467, 47 P.3d 836).

¶13　This Court reviews for correctness a district court's decision as to whether legal authority exists to award attorney fees. *Horace Mann Ins. Co. v. Hanke*, 2013 MT 320, ¶ 12, 372 Mont. 350, 312 P.3d 429. We review for an abuse of discretion a district court's order to grant or deny attorney fees if legal authority exists for the fees. *Horace Mann*, ¶ 12.

## DISCUSSION

6

¶14    *1: Whether the District Court erred in granting declaratory judgment in favor of Beebe.*

¶15    The Board argues that in granting Beebe's declaratory judgment motion, the District Court interpreted the Covenants and Bylaws too narrowly and neglected to consider the Covenants and Bylaws in conjunction with past Association meeting minutes. The Board also maintains that the District Court misinterpreted the term "maintenance" within the context of the governing documents.

¶16    The Board correctly suggests that courts should "read declarations of covenants on their four corners as a whole, and terms are [to be] construed in their ordinary or popular sense," citing *Bordas v. Va. City Ranches Ass'n*, 2004 MT 342, ¶ 24, 324 Mont. 263, 102 P.3d 1219. As this Court recognized in *Rich v. Ellingson*, 2007 MT 346, 340 Mont. 285, 174 P.3d 491, "[o]nly where an ambiguity exists may the court turn to extrinsic evidence of contemporaneous or prior oral agreements to determine the intent of the parties." *Rich*, ¶ 15 (citation omitted). The Board concedes that "the specific words or terms of the [covenants] are not ambiguous in isolation," and it has failed to identify any ambiguity in the Covenants or Bylaws that would compel us to consider extrinsic evidence in interpreting the documents. We therefore analyze the terms of the Covenants and Bylaws in accordance with their plain meaning.

¶17    As the District Court concluded, the project along McIllhatten Road was for the construction of a new trail. The crux of the parties' dispute is the proper manner in which the Board can levy funds from its members for the trail project under the Associations' Covenants and Bylaws. The logical starting point is Article VI titled "ASSESSMENTS."

7

¶18     Article VI, Section 2 of the Covenants clearly identifies two types of assessments: maintenance and special assessments.  Article VI's subsequent provisions bolster this conclusion.  Section 4 specifically addresses "maintenance assessments," which comprise those funds levied by the Association "for the purpose of financing the Association functions and duties."  Article VI, Section 6 provides that in addition to the maintenance assessment, the Board may levy a special assessment for purposes of construction or repair of a capital improvement upon the Trail System.  Beebe contends that the trail project in question is unquestionably a capital improvement which can be funded only by a special assessment, which requires the consent of two-thirds of the votes of each of the class members.  The Board counters that it properly funded the trail work through maintenance assessments, and that a special assessment with the accompanying vote was not required.

¶19     The Board's argument that maintenance assessments "can include expenditures for improvements" ignores the framework and specificity of the maintenance provision, which clearly explains that maintenance assessments "shall include but not be limited to **maintenance of** . . . **other improvements.**"  (Emphasis added).  It does not reference the construction of a capital improvement, whereas Article VI, Section 6 provides that the purpose of a special assessment is to "defray[], in whole or in part, the cost of any construction, reconstruction, repair or replacement of a capital improvement."

¶20     The parties do not dispute that the trail project along McIllhatten Road is a new construction project.  As the District Court stated, "[a] new trail is properly classified as a capital improvement;" thus the Board must look to Article VI, Section 6 in order to administer an assessment from the Association's members.

¶21    We conclude, as did the District Court, that when contemplating the construction of a capital improvement, as here, the Covenants compel the Association to levy a special assessment "provided that any such assessment shall have the assent of two-thirds (2/3) of the votes of each class of members who vote in person or by proxy at a meeting duly called for this purpose."  Thus, the District Court's interpretation of the Covenants was correct. However, we find that the District Court erroneously concluded that the special assessment funds must be *used* within a year of the vote.  The language of Article VI, Section 6 provides that the Association may levy a special assessment "applicable to that year only," not that the Association is obligated to spend these funds within a year of the vote.  The propriety of this finding, however, does not affect the outcome and the error is therefore harmless.  *See Renner v. Nemitz*, 2001 MT 202, ¶ 28, 306 Mont. 292, 33 P.3d 255 ("When the trial court makes an error, but sufficient facts are otherwise established by independent evidence and substantial justice has been done such that the error is harmless, this Court will not disturb the ruling of the lower court.") (citations omitted).  We affirm the District Court's decision granting declaratory judgment in favor of Beebe.

¶22    *2:  Whether the District Court erred in awarding attorney fees and costs to Beebe.*

¶23    The Board submits that the District Court improperly relied on § 28-3-704, MCA,[2] in awarding Beebe a "reciprocal right" to attorney fees and costs pursuant to Article VI, Section

---

[2]  Section 28-3-704, MCA, provides:

> Whenever, by virtue of the provisions of any contract or obligation in the nature of a contract made and entered into at any time after July 1, 1971, one party to the contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right brings an action upon the contract or obligation, then in any action on  the contract or obligation all parties to the contract or

7 of the Covenants. Article VI, Sections 7 and 8 are the sole provisions in the Covenants that allow for the recovery of attorney fees. *See* Opinion, ¶¶ 8-9. These sections provide for recovery of fees when an owner fails to pay his assessment and/or when the Board is required to levy an assessment against an owner who has failed to comply with the Covenants. The Board argues that because the award of fees to Beebe stemmed not from an assessment dispute but rather from the fact that he prevailed in his declaratory action, it was error for the court to apply Article VI, Section 7 in a reciprocal manner. We agree with the Board. Article VI, Section 7 is limited in scope to claims for the recovery of assessments, where the Association has expended money performing its functions and seeks to recoup those funds from Association members. Were this provision applied reciprocally, as § 28-3-704, MCA, contemplates, the member would have a reciprocal entitlement to fees only in the event that he prevailed in a dispute in which the Association sought the recovery of assessments against him.

¶24     Beebe did not argue that the Association improperly levied assessments against him; rather, Beebe initiated the litigation to request a judicial determination that the Covenants require a specified approval process before assessments may be collected from Association members for a new trail project. The District Court concluded that the project qualified as a capital improvement that required the Board to follow the voting procedures outlined in Article VI, Section 6 of the Covenants. There is no attorney fee provision in the Covenants that provides for an award of attorney fees and costs under these circumstances.

---

obligation are considered to have the same right to recover attorney fees and the prevailing party in any action, whether by virtue of the express contractual right or by virtue of this

10

¶25    In *Hoff v. Lake Cnty. Abstract & Title Co.*, 2011 MT 118, 360 Mont. 461, 255 P.3d 137, Hoff prevailed on a default judgment against a lending corporation and subsequently sought attorney fees pursuant to his loan's trust indenture provision titled "Loan Charges" and the "reciprocal right" to attorney fees identified in § 28-3-704, MCA. *Hoff*, ¶ 17. This Court upheld the district court's decision to deny Hoff's attorney fees request, noting the language of the trust indenture provision which allowed the lender to charge Hoff fees, including attorney fees, "for services performed 'in connection with [Hoff's] default.'" *Hoff*, ¶ 37. The Court found that because Hoff's original complaint alleged only negligence and breach of contract claims, Hoff was not entitled to attorney fees under a trust indenture provision related to a default. *Hoff*, ¶ 37 ("[t]he trust indenture provision does not entitle either party to attorney fees under these circumstances"). As in *Hoff*, Beebe did not raise allegations that relate to the circumstances identified in Article VI, Section 7. We therefore conclude that the District Court erred in granting Beebe a "reciprocal right" to attorney fees and costs by applying § 28-3-704, MCA, to Beebe's claim.

¶26    Beebe requests that if we deny his recovery of fees under the reciprocal provision, we reverse the District Court's denial of fees under the UDJA. As noted, the District Court rejected Beebe's alternative argument requesting attorney fees and costs under the UDJA, § 27-8-313, MCA. "In an action for a declaratory judgment, § 27-8-313, MCA, may provide a statutory basis for awarding attorney fees as supplemental relief, if such an award is determined to be necessary and proper." *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 43, 354 Mont. 50, 221 P.3d 1230. We have further stated that "while a district court has

section, is entitled to recover reasonable attorney fees from the losing party or parties.

11

the discretion to award attorney fees under § 27-8-313, MCA, such fees are only appropriate if equitable considerations support the award." *Mungas*, ¶ 45.

¶27 In considering the threshold question as to whether equitable considerations support an award of attorney fees and costs, we conclude that the facts of this case do not warrant such a result. An award of attorney fees in a declaratory action is a rarity; in fact, as we noted in *Horace Mann*, "only once have we upheld an award of attorney's fees in a declaratory relief action under § 27-8-313, MCA." *Horace Mann*, ¶ 35. As we further noted in *Horace Mann*, ¶ 36, the sole case in which such an award was upheld, *Renville v. Farmers Ins. Exch.*, 2004 MT 366, 324 Mont. 509, 105 P.3d 280, "represents an outlier where equity supported an award of attorney's fees."

¶28 This Court has on one occasion overturned the decision of a District Court for its failure to award attorney fees under the UDJA. In *City of Helena v. Svee*, 2014 MT 311, 377 Mont. 158, 339 P.3d 32, we concluded that because the equitable considerations of the case merited an award of attorney fees, the District Court abused its discretion in denying the defendants this recovery. *Svee*, ¶ 27. The defendants were attempting a low-cost repair to the roof of their home in response to notice from their insurance company about possible cancellation of coverage. Insisting that the Svees' attempted repair violated a municipal ordinance, the City of Helena proceeded to name them as defendants in a criminal action for re-roofing their house without a permit, and in addition filed a 6-count civil complaint against them. The Svees responded by seeking a declaratory judgment that the ordinance upon which the City relied was invalid on statutory grounds. *Svee*, ¶ 4. The District Court

12

agreed with the Svees and entered judgment in their favor, declaring that the City had no legal authority to adopt or enforce the subject ordinance. *Svee*, ¶ 5.

¶29 We reversed the District Court's order denying Svees the recovery of attorney fees, concluding that one of the equitable considerations underlying an award of fees under the UDJA is whether the parties are similarly situated. *Svee*, ¶ 20. We observed that the parties in the case were not similarly situated because the City had significantly greater resources to litigate the civil and criminal cases than did the Svees, and yet the Svees were compelled to undergo three years of litigation and the incurrence of substantial legal fees in order to vindicate their contention that the subject ordinance was invalid. *Svee*, ¶¶ 21, 25.

¶30 Similar extraordinary considerations are not present here. The circumstances prompting the filing of this litigation do not demand recourse in equity. We therefore cannot conclude that the District Court abused its discretion in refusing to grant attorney fees under the UDJA.

## CONCLUSION

¶31 For the foregoing reasons, we affirm the decision of the District Court granting declaratory judgment in favor of Beebe, but reverse the District Court's award of attorney fees and costs to Beebe.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON